## Orin H. Mathews, Register of Wills, v. Selina Biddell, Appellant.

*Costs—Public officers—Register's court.*

With the probate of a will the register's judicial powers cease, and proceedings had before a register upon a petition to revoke letters testamentary are unwarranted in law and no costs can be allowed or taxed therefor

Argued May 9, 1898. Appeal, No. 12, April T., 1898, by defendant, from order of C. P. Beaver Co., March T., 1897, No. 46, dismissing appeal from prothonotary and directing taxation of costs. Before RICE, P. J., WICKHAM, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Appeal from taxation of costs. Before WILSON, J.

The plaintiff, who was register of wills of Beaver county,

filed his bill of costs with the prothonotary in the matter of a rehearing on petition filed by defendant in this case praying for the revocation of the probate of a will. The register held several meetings at which a number of witnesses were examined and he called to his assistance his stenographer who took the testimony down in shorthand. The bill taxed was for services for holding register's court seven days $26.25, and for stenographer's fees $75.00, and witnesses' fees for proponent $53.80.

The court below disallowed the item for witness fees, allowed the register's compensation at the rate of $3.00 per day and allowed the stenographer's fee. Defendant appealed.

*Errors assigned* among others were, (1) in allowing the register of wills pay for holding "register's court." (2) In allowing pay to a stenographer. (5) In sustaining the taxation of any costs, notwithstanding the fact that the register had not filed an opinion or order in the matter submitted to him.

*Roger Cope*, with him *T. J. Wilson*, for appellant.—The register's court was abolished by section 22, article 5, of the constitution of 1874, so the register cannot charge fees for holding any such court. He can charge only for what he actually did as register of wills. It will not do to say that he can do one kind of work and charge for a different kind: Curry v. Carrol, 5 Watts, 477.

There is no statute authorizing the register of wills to employ a stenographer to aid him in the duties of his offices and afterwards charge a fee for the services of the latter and file it in court of common pleas as a lien on the land of those who do business in the register's office.

The certificate filed by the register shows that the stenographer was specially employed by the register, and not by the defendant or appellant.

Although the appellant was the mover in the proceedings before the register, no fees should be taxed to her, except it be authorized by the 37th section of the Act of Assembly of March 15, 1832, P. L. 145, increased fifty per cent by the Act of March 1, 1865, P. L. 259.

*L. E. Grim*, with him *W. S. Moore*, for appellee.—That the

register was compelled to perform these services there can be
no question; and while it is true that the register's court has
been abolished, yet that fact does not take away from the reg-
ister the right to recover fees for such services as he may per-
form as register; and while the register's fee bill may not
provide for the particular items of charge, yet provision is made
for the payment of all services by the last paragraph of sec-
tion 7, Act of April 2, 1868, P. L. 10: "Same fee for services
not herein specially provided for the same as for similar ser-
vices."

OPINION BY SMITH, J., July 29, 1898:

With the probate of the will the register's judicial powers
ceased. Under the constitution all questions thereafter touch-
ing the probate or the validity of the will are to be determined
by the orphans' court, on appeal from the register's decision,
where the proper issue may be framed. In the present case a
will was proved June 1, 1891. On May 30, 1896, the appel-
lant filed a petition with the register alleging undue influence
in the execution of the will and asking for the revocation of
probate and for further relief. To this an answer was filed
and the register proceeded to take testimony, before himself,
presumably, touching the issue thus presented. He made no
order or decree in the premises but in December, 1896, filed a
bill of costs with the prothonotary, against the appellant, for
"holding register's court," for "stenographer's fees" in taking
testimony "specially employed by the register," and for "wit-
ness's fees for proponent." From the taxation of these costs by
the prothonotary an appeal was taken to the common pleas,
where objection to the proceeding was made on the ground
that register's courts were abolished by the constitution of
1874, and "the fees must go with the court." The court
allowed the items for holding register's court and for stenog-
rapher's services, disallowed the item for witness's fees, and
as to the constitutional objection to the proceedings said:
"Whether or not this is true matters not in this case. The
applicant chose this forum for attacking the will of her deceased
father, and compelled the respondent to appear and defend,
and if this were the only reason the item for holding of regis-
ter's court would not be disturbed; but it is argued or alleged

that the sum of $26.25 is excessive for seven days' holding of court. In this the court concurs. The act of March 15, 1832, provides for register's fees in such cases, and fixes the fee at $2.00 per day, and the Act of March 1, 1865, P. L. 259, increases this fee fifty per centum. Thus it will be seen that the register is entitled to but $3.00 a day, instead of $3.75, which he charged. This item is therefore reduced to $21.00, instead of $26.25.

"As to the stenographer's fees, an examination of the testimony taken, both of witnesses for the appellant and respondent who used him in the contest over the will above mentioned, discloses the fact that there were five hundred folios of typewritten testimony taken. While it is true that the stenographer's fees are not itemized at so much per day or so much per folio, yet the fee charged for the work done is so small in comparison with that paid for like work in the courts that it should not be disturbed. The stenographer was a common benefit to both parties, not only to the register in the matter of saving of time and in expediting the proceedings, but much more satisfactory than if the register had taken the testimony in longhand. If all the stenographer's charges were so moderate as these, the court would take great pleasure in approving them. . . .

"While it is true that there is no formal decree in the certificate of the register of wills directing Selina Biddell to pay the costs appearing in the certificate of the register, yet the paper itself discloses the fact that the bill was made to her. As has already been said, the defendant chose to contest the will of her deceased father before the register, bringing witnesses before him and asking him to decide upon the validity of the will, and to set the same aside, and the respondent was compelled to produce witnesses in the same forum, and the court is not disposed to strike down the fees charged for the service required of the register and the charge of the stenographer."

It is difficult to understand how the services of the stenographer, or of the register, for that matter, were "a common benefit to both parties," in this unconstitutional proceeding. It is not alleged that the testimony thus taken was under a rule or order of court, or for its use; while more than five

years had elapsed before the services were performed and no proper action was taken within that period to contest the validity of the will.

It is a plain attempt to enforce compensation for the services of a court which was abolished by the constitution and its duties transferred to another tribunal, under the plea that, as the proceedings were instituted on the petition of the appellant, she is therefore bound to pay for the work done on the same basis and with like remedy as if the register were still authorized to hold court. The proceeding is unwarranted in law and cannot receive judicial sanction. Courts will not countenance much less assist in attempts to perpetuate institutions abolished by the constitution, or enforce by special remedy the collection of charges for services forbidden by law. No principle of equity will aid a register of wills in the violation of his official duties. The claim allowed by the court below was wholly personal to the register; the charge for services of a stenographer is as unauthorized as the charge for holding a register's court.

The decree of the court below is reversed, the taxation of costs against the appellant set aside and it is directed that the costs of this proceeding be paid by the appellee.